COURT OF APPEALS
DECISION
DATED AND FILED

November 2, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1468-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2017CF68**

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

HOLLIS TRISTAN DUKES,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Douglas County: KELLY J. THIMM, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Hollis Dukes appeals a judgment, entered upon a jury's verdict, convicting him of second-degree sexual assault by sexual contact

with an unconscious person, contrary to WIS. STAT. § 940.225(2)(d) (2019-20).[1] Dukes argues that the circuit court erroneously exercised its discretion by admitting other acts evidence. We reject Dukes' arguments and affirm the judgment.

## BACKGROUND

¶2    On the night of October 14, 2016, Dukes was staying at a friend's house while his friend was away. During the night, a group of people arrived at the house and consumed alcohol and cocaine. One member of the group, Nora,[2] eventually went into another room and fell asleep on a couch. She awoke with her pants down below her knees and someone, whom she later identified as Dukes, touching her vagina. The State ultimately charged Dukes with one count of second-degree sexual assault by sexual contact of an unconscious person.

¶3    The State sought to introduce other acts evidence at trial, consisting of sexual assault allegations by two other women against Dukes. The women, Melissa and Helen,[3] reported the assaults to police after learning that Dukes had been charged with sexually assaulting Nora. Melissa told police that on the night of March 10, 2016, she allowed Dukes, a homeless man she knew from a local bar, to stay at her house because he needed a place to sleep. Melissa, who shared

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4), we use a pseudonym instead of this victim's name.

[3] Although Melissa and Helen are not victims in the case currently before us, they are the victims in a criminal proceeding that was filed in Minnesota. Therefore, consistent with the policy underlying WIS. STAT. RULE 809.86(4), we use pseudonyms for them as well.

the house with two roommates, told Dukes he could sleep in her bed and she would sleep elsewhere. Melissa told police she had "a little too much alcohol to drink that night" and she went downstairs to the basement to watch a movie. Dukes followed and asked whether they could cuddle, to which Melissa said "no." Melissa said she fell asleep in an oversized chair, and when she woke up, Dukes was on top of her with his penis in her vagina. Melissa unsuccessfully struggled to get Dukes off of her. When Dukes suggested they continue having sex in her bedroom upstairs, Melissa pretended to agree and was then able to lock Dukes out of the basement after he ascended the stairs ahead of her.

¶4     Helen, one of Melissa's roommates, told police that on the same night, she was sleeping when Dukes started knocking on her bedroom door. When Helen opened the door to tell Dukes to stop knocking, he "force[d] himself on [her]." While she tried to fight him off, Helen told police she was "so drunk and tired she couldn't really fight him."

¶5     After a hearing, the circuit court granted the State's motion to admit the other acts evidence, and both Melissa and Helen testified at trial. Dukes testified in his own defense, conceding that he slept in the house where Nora was assaulted, but denying that he sexually assaulted her. Dukes denied staying at Melissa's house or sexually assaulting either Melissa or Helen.

¶6     A jury found Dukes guilty of the crime charged. Out of a maximum possible forty-year sentence, the circuit court imposed a twenty-year sentence consisting of ten years' initial confinement and ten years' extended supervision.

Dukes filed a postconviction motion challenging a $5,000 fine that was imposed. The court denied that motion, and this appeal follows.[4]

## DISCUSSION

¶7     Dukes argues that the circuit court erroneously exercised its discretion in admitting the other acts evidence. The admissibility of evidence lies within the circuit court's sound discretion. *State v. Pepin*, 110 Wis. 2d 431, 435, 328 N.W.2d 898 (Ct. App. 1982). The court must engage in a three-step analysis to determine the admissibility of other acts evidence. *State v. Sullivan*, 216 Wis. 2d 768, 771-73, 576 N.W.2d 30 (1998). The first inquiry is whether the other acts evidence is offered for an acceptable purpose under WIS. STAT. § 904.04(2), such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Sullivan*, 216 Wis. 2d at 772.

¶8     After ascertaining whether the other acts evidence is offered for a permissible purpose, the analysis turns to whether the other acts evidence is relevant. *Id.* In assessing relevance, the court must first consider whether the other acts evidence relates to a fact or proposition that is of consequence to the determination of the action. *Id.* The second consideration in assessing relevance is whether the other acts evidence has a tendency to make the consequential fact or proposition more probable or less probable than it would be without the evidence.

---

[4] Because Dukes does not pursue his challenge to the fine on appeal, we deem this argument abandoned. *See **Reiman Assocs., Inc. v. R/A Advert., Inc.***, 102 Wis. 2d 305, 306 n.1, 306 N.W.2d 292 (Ct. App. 1981) (an issue not briefed on appeal is deemed abandoned).

*Id.* Finally, the court must determine whether the evidence's probative value outweighs the danger of unfair prejudice. *Id.* at 772-73.

¶9 Dukes does not dispute that the other acts evidence was offered for a permissible purpose—namely, to prove identity. Dukes, however, contends that the other acts evidence was not relevant to prove identity. With respect to the first consideration in assessing relevance, identity was an issue of consequence because Dukes denied assaulting Nora. As the circuit court noted, the issue of identity was "the heart of the case." Turning to the second consideration in assessing relevance, "[t]he measure of probative value in assessing relevance is the similarity between the charged offense and the other act." *State v. Davidson*, 2000 WI 91, ¶67, 236 Wis. 2d 537, 613 N.W.2d 606. To that end, Dukes argues that the alleged sexual assaults of Melissa and Helen "are not so similar to operate as a modus operandi sufficient to identify Dukes" as the person who assaulted Nora. We disagree.

¶10 As our supreme court explained in *State v. Fishnick*, 127 Wis. 2d 247, 378 N.W.2d 272 (1985):

> Where other-acts evidence is used for identity purposes, similarities must exist between the "other act" and the offense for which the defendant is being tried. Similarities which tend to identify the defendant as the proponent of an act also tend to ensure a high level of probativeness in the other-acts evidence. These similarities may be established, for example, where there is a discernable method of operation from one act to the next, or where the other act and the crime charged and their surrounding circumstances are so similar that the incidents and circumstances bear the imprint of the defendant.

*Id.* at 263 (citations omitted). The threshold measure for similarity with regard to identity is nearness of time, place, and circumstance of the other act to the crime alleged. *State v. Scheidell*, 227 Wis. 2d 285, 305, 595 N.W.2d 661 (1999).

¶11 Contrary to Dukes' arguments, the facts and nature of the other acts evidence are quite similar to Nora's sexual assault. Like Nora, the other women had allegedly fallen asleep while intoxicated with Dukes in the same house. Melissa awoke in the midst of being sexually assaulted and Helen was awakened and then sexually assaulted. None of the women consented to sexual contact with Dukes, and in each case, Dukes allegedly exploited the advantage of proximity and the vulnerability of a sleeping, intoxicated victim. Further, the other acts occurred only a few miles away and about seven months before Nora's assault.

¶12 Dukes nevertheless cites *State v. Meehan*, 2001 WI App 119, 244 Wis. 2d 121, 630 N.W.2d 722, as comparable to his own case. There, this court examined the admissibility of other acts evidence and determined that the other act was "substantially dissimilar from the charged act." *Id.*, ¶15. In *Meehan*, the other act "occurred in a private bedroom following an illegal entry, in the middle of the night, while the victim was sleeping; and the sexual contact was through the victim's clothes." *Id.* The *Meehan* court determined that the charged crime was "drastically different," as it "occurred in a public place, during the day, while the victim was awake; the sexual contact was directly to the skin, and no illegal entry was involved." *Id.* The *Meehan* court concluded that these differences "greatly reduced the probative value" of the other act, thus tending to make the earlier act propensity evidence. *Id.*

¶13 Here, Dukes emphasizes the dissimilarities between the charged offense and the other acts, focusing mainly on the fact that Nora had never met

Dukes before the night of her assault, while Melissa and Helen testified that they were acquaintances of Dukes before the alleged attacks. Dukes also points out that Melissa alleged her assault occurred after she and Dukes talked and watched a movie together, and Helen alleged her assault was aggressive. Dukes, however, ignores the significant commonalities of the three assaults—intoxicated, sleeping adult females; a homeless man spending the night in the same house as the respective victims; and positive identification of Dukes by each victim. Because of the similarities between the other acts and the charged offense, we conclude the circuit court properly determined the other acts evidence was relevant and probative of modus operandi, and therefore identity.

¶14 With respect to the third step in the *Sullivan* analysis—whether the evidence's probative value outweighs the danger of unfair prejudice—Dukes argues the evidence was unfairly prejudicial given the State's "objectively weak" case. Citing *State v. Whitty*, 34 Wis. 2d 278, 294, 149 N.W.2d 557 (1967), Dukes emphasizes that "[i]n identity cases the prejudice is apt to be relatively greater than the probative value." Dukes asserts that rather than presenting sufficient evidence to prove beyond a reasonable doubt that Dukes assaulted Nora, the State merely presented other acts evidence to argue that Dukes acted in conformity with his alleged bad character. Dukes' claim of unfair prejudice, however, assumes the other acts evidence was only "somewhat relevant" to the identity of Nora's assailant. As noted above, and as the circuit court determined, the probative value of the other acts evidence was "significant" with respect to identity—a central issue in the case—thus outweighing the danger of unfair prejudice.

¶15 Moreover, the circuit court mitigated the risk of unfair prejudice by cautioning the jury not to consider the other acts evidence "to conclude that the defendant has a certain character or a certain character trait and that the defendant

acted in conformity with that trait or character with respect to the offense charged in this case." We presume the jury followed the court's instructions. *See **State v. Adams***, 221 Wis. 2d 1, 12, 584 N.W.2d 695 (Ct. App. 1998). In his reply brief, Dukes argues that the cautionary instruction was faulty because it was not tailored to the present case. Dukes, however, waived his present challenge to the instruction by failing to contemporaneously object. *See* WIS. STAT. § 805.13.

¶16 Ultimately, the record reflects an adequate weighing of proper factors and supports the circuit court's determination that the evidence's probative value outweighed any prejudice. The court, therefore, properly exercised its discretion when admitting the other acts evidence.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.